1  LOEB & LOEB LLP
   LANCE N. JURICH (SBN 132695)
2  ljurich@loeb.com
   BENJAMIN R. KING (SBN 205447)
3  bking@loeb.com
   10100 Santa Monica Blvd., Suite 2200
4  Los Angeles, CA  90067
   Telephone: 310.282.2000
5  Facsimile: 310.282.2200

6  Attorneys for Defendant
   TREVOR DRINKWATER

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11 In re:                              )  Case No.: 2:11-BK-62283-RN
                                       )
12 GENIUS PRODUCTS, LLC,               )
                                       )
13            Debtor.                  )  Chapter 7
                                       )
14 ─────────────────────────────────  )  Adversary No. 2:14-AP-01287-RN
                                       )
15 ALFRED H. SIEGEL, CHAPTER 7         )  **DEFENDANT TREVOR
   TRUSTEE FOR THE ESTATE OF           )  DRINKWATER'S OPPOSITION TO
16 GENIUS PRODUCTS, LLC,               )  MOTION OF PLAINTIFF
                                       )  ALFRED H. SIEGEL, CHAPTER 7
17            Plaintiff,               )  TRUSTEE FOR THE ESTATE OF
                                       )  GENIUS PRODUCTS, LLC, FOR
18       v.                            )  LEAVE TO AMEND COMPLAINT**
                                       )
19 TREVOR DRINKWATER,                  )  [Concurrently filed with the supporting
                                       )  Declarations of Trevor Drinkwater and
20            Defendant.               )  Benjamin R. King, and exhibits thereto]
                                       )
21                                     )  Hearing Date:   November 1, 2016
                                       )  Hearing Time:   2:00 p.m.
22                                     )  Courtroom:      1539
                                       )
23 ─────────────────────────────────  )

24

25

26

27

28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001                    OPPOSITION TO MOTION FOR CONTINUANCE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 4

    A.   Filing Of Debtor's Bankruptcy And This Adversary Action ....................... 4

    B.   Settlement Discussions, Mr. Drinkwater's Production Of
        Documents In Connection With The Same ................................................ 5

    C.   Trustee's Appointment Of Special Litigation Counsel And Belated
        Attempt To Assert New Claims ................................................................ 5

    D.   Breakdown In Settlement Discussions And Rule 26(f) Conference ............ 6

    E.   Parties' Discovery Efforts Based Upon The FAC ...................................... 7

    F.   The FAC And The New Allegations Of The Proposed Amendment ........... 7

III.  LEAVE TO AMEND SHOULD BE DENIED. ......................................... 8

    A.   The Proposed Amendment Is Futile As The New Allegations Are
        Barred By The Statute Of Limitations ...................................................... 9

        1.   The Statute Of Limitations Ran On A New Breach Of
            Fiduciary Duty Claim On May 4, 2014. ........................................ 9

        2.   The Proposed Amendment Does Not Relate Back Because
            The FAC Did Not Put Mr. Drinkwater On Notice Of Suit
            Based Upon Conduct Related To The Weinstein
            Transactions. ............................................................................ 10

        3.   The Trustee's Reservation In The FAC Of A Right To
            Amend Does Not Create Such A Right Or Excuse The
            Trustee's Lack Of Detail In That Pleading. ................................... 17

        4.   The Recent Motion Filed By The Weinstein Company
            Defendants Demonstrates Clear Legal Flaws In The
            Trustee's New Theory ............................................................... 18

    B.   Leave To Amend Is Untimely Following The Trustee's Undue
        Delay. ................................................................................................... 19

    C.   Allowing Leave To Amend Will Prejudice Mr. Drinkwater And
        Cause Further Undue Delay To This Proceeding. ..................................... 20

    D.   Leave To Amend Is Sought In Bad Faith. ................................................ 21

IV.   CONCLUSION ....................................................................................... 22

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

i

OPPOSITION TO MOTION FOR CONTINUANCE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
   545 F.3d 733 (9th Cir. 2008) ...........................................................................8

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ...........................................................................8

*Alzheimer's Inst. Of Am. v. Elan Corp. PLC*,
   274 F.R.D. 272 (N.D. Cal. 2011) ...................................................................18

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
   465 F.3d 946 (9th Cir. 2006) .........................................................................20

*Anderson v. Bondex International, Inc. et al.*,
   552 Fed.Appx 153 (3rd Cir. 2014) ..............................................................3, 4

*Baldwin Cty. Welcome Ctr. v. Brown*,
   466 U.S. 147 (1984)...........................................................................................3

*Carrico v. City & County of San Francisco*,
   656 F.3d 1002 (9th Cir. 2011) .......................................................................17

*Carvalho v. Equifax Info. Servs., LLC*,
   629 F.3d 876 (9th Cir. 2010) .....................................................................8, 21

*Davaloo v. State Farm Ins. Co.*,
   135 Cal.App.4th 409 (2005) ...........................................................................11

*Finazzo v. Hawaiian Airlines*,
   2007 U.S. Dist. LEXIS 26003, at *14-15 (D.Hi. 2007) ...............................20

*Gabrielson v. Montgomery Ward & Co.*,
   785 F.2d 762 (9th Cir. 1986) ...........................................................................9

*Hernandez v. ValleyView Hosp. Ass'n*,
   684 F.3d 950 (10th Cir. 2012) ...........................................................10, 12, 16

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) .........................................................................8

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   194 F.3d 980 (9th Cir. 1999) .........................................................................18

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

ii

OPPOSITION TO MOTION FOR CONTINUANCE

*Long v. United States Dep't of Defense*,
    616 F.Supp. 1280 (E.D.N.Y. 1985)................................................................ 9

*Martell v. Trilogy, Ltd.*,
    872 F.2d 322(9th Cir. 1989)................................................................ 16

*Mayle v. Felix*,
    545 U.S. 644 (2005) ................................................................ 12

*Minter v. Prime Equip. Co.*,
    451 f.3d 1196 (10th Cir. 2006)................................................................ 20

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990)................................................................ 20

*Owens v. Kaiser Foundation Health Plan, Inc.*,
    244 F.3d 708 (9th Cir. 2001)................................................................ 21

*Paramount Pictures v. REPLAY TV*,
    298 F.Supp.2d 921 (C.D.Cal. 2004)................................................................ 9

*Patwardhan v. United States ex rel. HHS*,
    2014 U.S. Dist. LEXIS 36226 (C.D. Cal. Mar. 18, 2014)........................ 18, 21

*Percy v. San Francisco General Hospital*,
    841 F.2d 975 (9th Cir. 1988)........................................................ 10, 11, 16

*Pierce v. Lyman*,
    1 Cal.App.4th 1093 (1991) ................................................................ 15

*Santamarina v. Sears Roebuck Co.*,
    444 F.3d 570 (7th Cir. 2006)........................................................ 10, 11, 16

*Scafidi v. Western Loan & Bldg. Co.*,
    72 Cal.App.2d 552 (1946) ................................................................ 14

*Sepehry-Fard v. Bank of New York Mellon, N.A.*,
    2013 U.S. Dist. LEXIS 110751 (N.D. Cal. Aug. 5, 2013) ........................ 19

*U.S. v. Hicks*,
    283 F.3d 380 (D.C.Cir. 2002) ................................................................ 16

*Vested Hous. Group, LLC v. Principal Real Estate Investors, LLC*,
    2016 U.S. App. LEXIS 6932 (9th Cir. Apr. 18, 2016)................................ 8

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

**Statutes**

11 U.S.C. Section 546(a) ................................................................................................. 9

**Other Authorities**

FRBP Rule 7015 .............................................................................................................. 10

FRCP Rule 15(c) ....................................................................................................... 10, 11

FRCP Rule 15(c)(1)(B) ............................................................................................. 10, 11

FRCP Rule 26(f) ............................................................................................................ 6, 7

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

## OPPOSITION BY DEFENDANT TREVOR DRINKWATER TO TRUSTEE'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendant Trevor Drinkwater ("Mr. Drinkwater") hereby opposes the motion of Chapter 7 Trustee Alfred H. Siegel ("Trustee") for leave to amend his Second Amended Complaint in the above-captioned adversary proceeding (the "Amendment Motion"). As set forth below, the Trustee has failed to demonstrate good cause for the requested leave to amend and the Amendment Motion should be denied.

## I.    INTRODUCTION

It has been more than *four years* since the involuntary proceeding to which this action relates began against debtor Genius Products, LLC ("Debtor"). It has been more than *two years* since this adversary proceeding was initiated. It has been approximately *seventeen months* since the Trustee filed a detailed complaint against The Weinstein Company and related entities (the "Related Case") alleging much of the same facts contained in the Trustee's proposed Second Amended Complaint that the Trustee now seeks leave to file (the "Proposed Amendment," attached as Exhibit A to the Amendment Motion). Now, with no valid explanation for the delay, the Trustee now seeks to assert essentially **an entirely new case** against Mr. Drinkwater based upon the same relationship between the Debtor and the Weinstein entities that is the subject of the Related Case.

Despite the concededly liberal standards governing the amendment of pleadings, this case is one of those exceptional instances where even the liberal standards toward amendment should not compel leave to amend. This case began in May 2014 as a simple lawsuit over what reasonably and fairly appeared to Mr. Drinkwater to concern approximately $800,000 in business expense reimbursements that Mr. Drinkwater received over a period of years while serving as the President and Chief Executive Officer of Debtor. The Trustee filed his First Amended Complaint against Mr. Drinkwater (the "FAC") one day after initiating the action. At the same time, the Trustee filed a series of nearly identical actions against a number of other former officers of Debtor. In the FAC (and in the roughly 16-page initial pleadings beginning all these officer lawsuits), despite

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

1

OPPOSITION TO MOTION FOR CONTINUANCE

1  the pleadings focusing almost entirely on a discrete list of identified business

2  reimbursements listed in an attachment to each complaint, the Trustee included the

3  following form allegation against *each* of the officers:

> Plaintiff is informed and believes that Defendant, either alone or in concert
> with other directors or officers of the Debtor, authorized payments in excess
> of $130,000,000.00 to insiders, including officers, directors and members of
> the Debtor, in an effort to avoid paying creditors of the Debtor and thereby
> breached his fiduciary duties by reducing the assets available to pay the
> Debtor's creditors in said amount.

8  *See* the concurrently filed Declaration of Benjamin King ("King Decl."), Exs. B through E,

9  at ¶ 53.  Since this allegation was first made, the Trustee has *voluntarily dismissed –*

10 *without payment or settlement – the actions against every other former officer but*

11 *Mr. Drinkwater*.  Rather than dismiss Mr. Drinkwater, the Trustee has instead belatedly

12 chosen to seek leave to file the Proposed Amendment, alleging an ***entirely different set of***

13 ***allegations against him***.  The Proposed Amendment concerns different circumstances,

14 different timing, different bases for alleged wrongful conduct, and different alleged

15 motivations for such alleged wrongful conduct.  The Proposed Amendment is anything but

16 a mere "expansion" or "clarification" upon the FAC as the Trustee suggests.

17     While the FAC focused on Mr. Drinkwater's receipt of a discrete list of business

18 reimbursements during the period from <u>December 2007 to the December 2011 petition</u>

19 <u>date</u> in the main matter involving Debtor, the Proposed Amendment focuses on an

20 elaborate alleged scheme by Mr. Drinkwater starting much earlier – and running from

21 <u>2005 to 2009</u>.  The Trustee seeks to vastly alter the nature of this lawsuit by alleging

22 (nonsensically) that, during that broader time period, Mr. Drinkwater intentionally entered

23 into a series of distribution-related agreements with the Weinstein entities that he knew

24 would doom the Debtor to business failure – purportedly all for the purpose of earning

25 short-term bonuses and enhancing his "power and prestige."

26     The statute of limitations for these new allegations expired long ago, and even the

27 Trustee concedes that the new allegations are barred absent a determination by this Court

28 that the Proposed Amendment "relates back" to the time of filing of the FAC.  The

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Trustee's argument for relation back relies entirely on his contention that the $130 million allegation quoted above put Mr. Drinkwater on notice that he could be later sued based upon the Weinstein transactions.  The Trustee relies upon the $130 million allegation because, now, the Trustee claims that the total amount paid by the Debtor to the Weinsteins in the statutory period preceding the Debtor's involuntary petition was roughly that amount.  However, the FAC contains *no reference to the Weinstein entities, no reference to any of the Debtor's agreements with the Weinstein entities, no allegations that the terms of those agreements were "onerous" to the Debtor or "one-sided" in favor of the Weinstein entities.  See* King Decl., Ex. B.  Nor does the FAC reference any time period coinciding with entry into the Weinstein agreements in 2005/2006 that could have helped Mr. Drinkwater connect the vague $130 million allegation with those transactions. *See id.*  Indeed – the time period referenced in the FAC ***expressly excludes*** the 2005/2006 time frame. *See id.*, ¶ 47.  The Proposed Amendment thus reaches back *years earlier* than the allegations of the original FAC.

Even the *Trustee* concedes in his concurrently filed motion for consolidation that the $130 million reference in the FAC may not, in itself, fairly evoke any connection to the Weinstein transactions.  The Trustee candidly states as follows:

> "That the [FAC] does not reference the Weinstein Defendants and the [operative Complaint in the Related Case] does not reference Mr. Drinkwater is irrelevant.  The Trustee has made it clear *in prior motions* that, ***to the extent it was not otherwise obvious***, the claims against the Weinstein Defendants . . . and the claim against Mr. Drinkwater . . . involve the same transfers and that these transfers are at the heart of both cases."

*See* the Trustee's concurrently filed Motion to Consolidate in this matter [Docket No. 81], at p. 6.  Notwithstanding the Trustee's faith in the notice provided by his "prior motions" which *followed* the FAC by a year or more, any notice in those "prior motions" is irrelevant for purposes of the relation-back doctrine – *the only notice that matters is that provided by the FAC.  See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984); *see also, e.g., Anderson v. Bondex International, Inc. et al.*, 552 Fed.Appx 153 (3rd

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1   Cir. 2014) (stating, "We . . . reject [the plaintiff's] argument that notice need not come

2   from the original pleading.").

3        Despite the liberal policies surrounding pleading amendments, there also exist long-

4   standing (and competing) policies related to the statute of limitations, which policies

5   impose the requirement of *fair notice* to a defendant before a statute of limitation will itself

6   be barred by application of the "relation-back" doctrine.  This case is one of those

7   instances where relation back is *not* appropriate.  That is because *no fair notice* was

8   imparted by the FAC to Mr. Drinkwater that he might one day be subjected to suit based

9   upon the complex, multi-year business relationship between Debtor and the Weinstein

10   entities.  In addition, as set forth below, leave to amend should be denied because: (1) the

11   new allegations on their face lack merit, also rendering amendment futile; (2) the Trustee

12   unduly delayed in seeking amendment; (3) leave to amend would be highly prejudicial to

13   Mr. Drinkwater; and (4) the Trustee seeks leave to amend in bad faith.

14        Any one of these grounds is sufficient to deny leave to amend, and because the

15   Trustee has not demonstrated sufficient good cause for leave to amend, the Amendment

16   Motion should be denied in its entirety.

17   **II.**    **<u>STATEMENT OF FACTS</u>**

18       **A.**    **<u>Filing Of Debtor's Bankruptcy And This Adversary Action</u>**

19        The bankruptcy of Debtor began as an involuntary petition filed on December 27,

20   2011 – more than <u>four years ago</u>.  *See* Docket No. 1 in Case No. 11-62283 (the "Main

21   Case").  Two years after the Order for Relief was entered, on May 1, 2014, the Trustee

22   filed the instant adversary proceeding against defendant Trevor Drinkwater, the former

23   CEO and President of Debtor (this "Adversary Action").  *See id.*, Docket No. 73.  The

24   following day, the Trustee filed the FAC in this Adversary Action, which contained

25   virtually the same allegations but added several additional causes of action (including

26   claims for conversion and recovery of alleged unlawful distributions).  *See* Adversary

27   Action, Docket No. 2.  At the same time, the Trustee filed similar lawsuits against a

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

4

OPPOSITION TO MOTION FOR LEAVE TO AMEND

number of other former officers of the Debtor, including Matthew Smith, Mitchell Budin, and Michael Radiloff. *See* King Decl., Exs. C through E.

Both the original Complaint and the FAC focus almost entirely on a series of very specific payments from Debtor to Mr. Drinkwater (identified in the Exhibit A to each complaint). *See* King Decl., Exs A and B. **Neither version of the Complaint makes any mention of The Weinstein Company, any agreements between the Debtor and any Weinstein entity, or the transactions that the Trustee now seeks to attack via the Proposed Amendment**. *See id.* The Trustee currently challenges those agreements/transactions as fraudulent conveyances in the separate related adversary proceeding against certain Weinstein entities (Adversary Proceeding No. 15-62283, filed on May 8, 2015 (the "Related Case")). *See id.*, Ex. F. Likewise, the operative Complaint in the adversary proceeding against The Weinstein Company contains no mention of Mr. Drinkwater whatsoever. *Id.*, Ex. B.

> **B.**      **Settlement Discussions, Mr. Drinkwater's Production Of Documents In Connection With The Same**

After the complaints in this Adversary Action were filed, counsel for Mr. Drinkwater and the Trustee undertook good-faith negotiations to attempt to settle the allegations against Mr. Drinkwater, including claims that Mr. Drinkwater had received improper business expense reimbursements and bonuses from the Debtor during his employment. *Id.*, ¶ 10. As part of that effort, Mr. Drinkwater initially produced over 2,800 pages of business records which demonstrated that the payments he received were either reimbursement for appropriate business expenditures or bargained-for compensation in connection with his former position as CEO and President of the Debtor (and he has since delivered every record he has related to the company to the Trustee). *Id.*

> **C.**      **Trustee's Appointment Of Special Litigation Counsel And Belated Attempt To Assert New Claims**

On February 16, 2015, the Trustee filed an application seeking to employ the law firm of Robins Kaplan LLP as Special Litigation Counsel for Debtor, for the limited

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

5

OPPOSITION TO MOTION FOR LEAVE TO AMEND

1   purpose of pursuing claims against The Weinstein Company and taking over the existing

2   Adversary Action against Mr. Drinkwater.  *See* Main Case, Docket No. 98.  In that

3   Application, the Kaplan firm told this Court that it had completed a "thorough analysis"

4   related to the Weinstein transactions that began in July 2014 and extended for <u>at least five</u>

5   <u>months</u>.  That review and analysis included the Kaplan firm's review of "documents

6   provided by [The Weinstein Company] . . . ."  *See id.*, at p. 2.  Ultimately, according to the

7   Application, the Kaplan firm  "concluded that viable claims against [The Weinstein

8   Company] exist . . . ."  *Id.*  Specifically, the Kaplan firm concluded that: (1) The Weinstein

9   Company "received transfers from Debtor of approximately $130 million"; and

10  (2) Mr. Drinkwater "received transfers of approximately $802,346."  *Id.* (emphasis added).

11      In the Application, the Trustee gave no indication that the Kaplan firm's extensive

12  analysis uncovered any alleged wrongdoing by *Mr. Drinkwater* in connection with the

13  Weinstein Company claims, and again, the Trustee's subsequently filed adversary action

14  against The Weinstein Company makes *no mention of Mr. Drinkwater whatsoever.*  On

15  March 30, 2015, this Court entered an Order approving the request for employment set

16  forth in the Application.  See Docket No. 113 in the Main Case.

17      **D.      <u>Breakdown In Settlement Discussions And Rule 26(f) Conference</u>**

18      Soon after the Kaplan firm stepped in on this matter, settlement talks between the

19  Trustee and Mr. Drinkwater ceased to be productive.  *See* King Decl., ¶ 10.  As a result,

20  counsel for Mr. Drinkwater invited a Rule 26(f) conference of counsel with the Trustee's

21  Special Litigation Counsel, which occurred on July 2, 2015.  *Id.*, ¶ 11.  In the process of

22  conferring, the Trustee's threatened for *the first time* that, in the absence of a settlement,

23  the Trustee would seek leave to amend the FAC to add allegations against Mr. Drinkwater

24  based upon alleged involvement in the Weinstein transactions.  *Id.*  The Trustee's counsel

25  stated that the Trustee no longer viewed the currently alleged transfers as really in dispute,

26  but was instead focusing on then *unpled claims* regarding The Weinstein Company that are

27  not part of the FAC.  *Id.*  Further, the Trustee's counsel advised that, in addition to seeking

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1  leave to amend, consolidation with the Weinstein Company proceeding would be sought

2  (as it now has).  *Id.*

3          **E.**    **Parties' Discovery Efforts Based Upon The FAC**

4         To date, and following the breakdown in settlement discussions, both parties have

5  served special interrogatories and production requests on each other, and made their

6  Rule 26(f) Initial Disclosures.  *See id.*, ¶ 12.

7          **F.**    **The FAC And The New Allegations Of The Proposed Amendment**

8         The focus of the original FAC is on the Trustee's efforts to recover approximately

9  $800,000 of alleged transfers from the Debtor to Mr. Drinkwater in the four years between

10  December 2007 and December 2011.  *See* King Decl., Ex. B.  No other time period is

11  referenced in the FAC.  *See id.*  Again, there is no mention in the FAC of The Weinstein

12  Company or related entities, or any transactions between the Weinstein entities and

13  Debtor, or any agreements between those companies – or any allegedly "onerous" or "one-

14  sided" obligations created by those agreements.  *See id.*  While, as stated above, the FAC

15  contains a "form" allegation of the alleged transfer by Mr. Drinkwater to unspecified

16  "insiders, including officers, directors and members of the Debtor" in the amount of

17  $130 million, there was nothing in this allegation that could have reasonably alerted

18  Mr. Drinkwater that this statement was intended to reference Debtor's multi-year

19  contractual distribution relationship with the Weinstein entities.  *See id.*, ¶ 53.

20  Mr. Drinkwater believed, if anything, that this allegation might accuse him of improper

21  transfers to his fellow former officers – who the Trustee had also sued and accused of the

22  same misconduct.  *See* the concurrently filed Declaration of Trevor Drinkwater

23  ("Drinkwater Decl."), ¶ 3.  Mr. Drinkwater's alleged motive in the FAC for the unspecified

24  transfers? – to assure that $130 million in Debtor funds were made *unavailable to*

25  *creditors*.

26         Fast forward to the Proposed Amendment, and now the Trustee tells a completely

27  different story.  The Trustee describes, at length, a complex multi-year distribution

28  arrangement between Debtor and the Weinstein entities, involving extensive agreements

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

that the Trustee alleges were "onerous" for the Debtor and "one-sided" in favor of the Weinsteins.  The relevant time period for alleged misconduct broadens to include two *additional* years of alleged misconduct – reaching back as early as December 2005.  The Trustee alleges that Mr. Drinkwater wrongfully caused Debtor to enter into the subject agreements with the Weinsteins beginning then.  In addition, new grounds of misconduct are alleged based upon Mr. Drinkwater purportedly causing Debtor to honor its contractual obligations under the subject agreements (rather than fold immediately or intentionally breach them).  Is Mr. Drinkwater's motivation still alleged to be to render the $130 million in Debtor funds unavailable to creditors? – no, now he is alleged to have acted in the interest of somehow enhancing his own "position" and "prestige" by allegedly causing the certain financial ruin of the Debtor!

Put simply, the Proposed Amendment does not "expand" or "clarify" the original FAC – it tells *a completely different story, over a different time period*.  As set forth below, the sparsity of the original FAC and the differences in the timing, transactions, and occurrences that are described in the two pleadings should foreclose relation-back and leave to amend even under the most liberal standards.

## III.    <u>LEAVE TO AMEND SHOULD BE DENIED.</u>

The decision of whether to grant a motion for leave to amend a complaint is committed to this Court's discretion.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010).  Leave to amend "is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).  A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [and] futility of amendment.'"  *Carvalho*, 629 F.3d at 892 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) (alterations in original)).  For example, "[l]eave to amend may be denied if a court determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (internal quotation

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

8

OPPOSITION TO MOTION FOR LEAVE TO AMEND

omitted); *accord Vested Hous. Group, LLC v. Principal Real Estate Investors, LLC*, 2016 U.S. App. LEXIS 6932, at *7 (9th Cir. Apr. 18, 2016).  The denial of a motion for leave to file an amended complaint is reviewed only for abuse of discretion.  *Id.*; *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990); *Jackson*, 902 F.2d at 1387.

Here, as set forth below, leave to amend should be denied for a variety of reasons, including that: (1) filing of the Proposed Amendment would be futile because the new allegations are barred by the applicable statute of limitations and, in any event, meritless on their face; (2) the Trustee has unduly delayed in seeking leave to amend; and (3) leave to file the Proposed Amendment is sought in bad faith.  The Court may consider any or all of these factors as appropriate; however, there is no requirement that all of these factors must apply to deny leave – any one of these factors is sufficient.  *See, e.g.*, *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986); *Paramount Pictures v. REPLAY TV*, 298 F.Supp.2d 921, 927-29 (C.D.Cal. 2004).

A.    **The Proposed Amendment Is Futile As The New Allegations Are Barred By The Statute Of Limitations**

1.    **The Statute Of Limitations Ran On A New Breach Of Fiduciary Duty Claim On May 4, 2014.**

Leave to amend should be denied as futile if new claims or allegations sought to be introduced by the amendment are barred by the applicable statute of limitations.  *See, e.g.*, *Long v. United States Dep't of Defense*, 616 F.Supp. 1280, 1284 (E.D.N.Y. 1985) (leave to amend futile if proposed claim is statute-barred).  Here, the statute of limitations for a breach of fiduciary duty against Mr. Drinkwater ran two days after the Trustee filed the original FAC – on May 4, 2014.  The Debtor's involuntary case was not initiated until December 27, 2011, and the order for relief was not entered until May 4, 2012.  Even giving the Trustee the benefit of 11 U.S.C. Section 546(a), the latest that a claim for breach of fiduciary duty could be alleged (absent tolling which does not exist here) was on May 4, 2014.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1    The Trustee does not dispute that the statute has run on its new allegations, but for

2    application of the relation-back doctrine which would permit the new fiduciary breach

3    allegations of the Proposed Amendment to "relate back" to the date of the filing of the

4    FAC.  Nevertheless, the Trustee is wrong that relation back is appropriate here.  As set

5    forth below, the Trustee's resort to the "relation-back" doctrine here is fundamentally

6    misplaced and erroneous.

7         **2.**      **The Proposed Amendment Does Not Relate Back Because The**

8                **FAC Did Not Put Mr. Drinkwater On Notice Of Suit Based Upon**

9                **Conduct Related To The Weinstein Transactions.**

10    The "relation back" of a pleading is governed by Rule 15(c) of the Federal Rules of

11    Civil Procedure, made applicable to this adversary proceeding by Rule 7015 of the Federal

12    Rules of Bankruptcy Procedure.  While Rule 15(c) provides several circumstances in

13    which a new pleading may relate back, in the Amendment Motion, the Trustee relies solely

14    upon Rule 15(c)(1)(B) for his claim to relation back here.  *See* Amendment Motion, at

15    pp. 11-13.  Rule 15(c)(1)(B) states that an amendment relates back to the date of an

16    original pleading when "the amendment asserts a claim or defense that arose out of the

17    conduct, transaction, or occurrence set out – or attempted to be set out – in the original

18    pleading."

19    As with other Federal Courts, the Ninth Circuit recognizes that the key to

20    determining whether a proposed amendment and original pleading each assert a claim or

21    defense that "arose out of the [same] conduct, transaction, or occurrence" is whether the

22    original pleading was ***sufficient to put the defendant on <u>notice</u> of the "particular***

23    ***transaction or set of facts" that the claimant believes to have cause the complained-of***

24    ***injury***.  *See Percy v. San Francisco General Hospital*, 841 F.2d 975, 979 (9th Cir. 1988)

25    (upholding district court's determination that "relation back" doctrine was inapplicable

26    when facts alleged in amended pleading differed from those in the original pleading)

27    (emphasis added); *see also Hernandez v. ValleyView Hosp. Ass'n*, 684 F.3d 950, 962 (10th

28    Cir. 2012) (upholding district court's determination that amended pleading did not relate

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

back because it "raised new and discrete allegations that were not pled" in the original

pleading).  Sufficient notice to the defendant is lacking for purposes of the relation-back

doctrine both where: (1) different facts or circumstances are raised by the original and

amended pleading (*see Percy* and *Hernandez, supra*); or where (2) "the original complaint

is *so cursory* that someone reading the amended complaint would not know whether it

referred to the same conduct charged in the original complaint."  *Santamarina v. Sears

Roebuck Co.*, 444 F.3d 570, 574 (7th Cir. 2006) (citing  *Davaloo v. State Farm Ins. Co.*,

135 Cal.App.4[th] 409 (2005)[1]) (emphasis added).

     Here, the allegations of the Trustee's original FAC were *both* cursory and different,

and as such <u>are not</u> sufficient for the Trustee to properly invoke the relation back doctrine

in validating the highly detailed and different Proposed Amendment under

Rule 15(c)(1)(B).  Even though the Trustee *now* says that the "transaction[s] or

occurrence[s]" vaguely referenced in the FAC were intended to be the complex and multi-

year business relationship and series of transactions between the Weinstein entities and the

Debtor now described in the Proposed Amendment, under any <u>fair reading</u> of the original

FAC, Mr. Drinkwater was **<u>not</u>** put on notice of that.  Comparing the two pleadings:

    • The FAC (already once amended by the Trustee) focuses nearly entirely on a

distinct set of "Transfers" which are *specifically defined and described in the FAC and

detailed on the listing attached as Exhibit A to the FAC*.  In Paragraph 48 of the FAC,

which in part sets out the Trustee's original breach of fiduciary duty claim, the Trustee

stated that "[Mr. Drinkwater] breached his fiduciary duties to Debtor and its creditors, *as

described in detail herein.*"  King Decl., Ex. B, at ¶ 48 (emphasis added).  However, the

only "*detail*" contained anywhere in the FAC pertains to the *non*-Weinstein "Transfers"

described throughout the FAC (which "Transfers" the Trustee now expressly *distinguishes*

from the "Weinstein Transfers" in the Proposed Amendment).  The FAC contains *no detail*

---

    [1]    In *Santamarina, supra*, the Seventh Circuit noted that, while *Davaloo* was
decided under California rather than federal law, the California standards for relation back
are "materially identical" to the standards under FRCP Rule 15(c).  *Santamarina,* 444 F.3d
at 573.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

11

concerning anything pertaining to the Weinstein entities, the Weinstein transactions, or the Weinstein agreements now described over many paragraphs and pages of the Proposed Amendment. *See Percy,* 841 F.2d at 979 (holding that "the policies underlying the statute of limitations are implicated [by Rule 15(c)]" and that "fairness to the defendant demands that the defendant be able to anticipate claims that might follow from the facts alleged [in the original pleading].").

   • In addition to the FAC's omission of *any mention* of the Weintstein companies, Weinstien agreements, and the allegedly "one-sided" or "onerous" terms thereof that are now the crux of the new allegations, the FAC addresses *different time periods* for the alleged wrongful conduct of Mr. Drinkwater than were referenced in the original FAC. The original FAC describes the wrongful conduct only as occurring within the 4-year statutory period from roughly June 2007 to the Petition Date. The Proposed Amendment, however, describes the impetus of the alleged wrongful conduct as occurring *much earlier* – going back to December 2005 when the Debtor and the Weinstein entities initiated their business relationship. *See* FAC, ¶ 47; Proposed Amendment, ¶¶ 10-12. The U.S. Supreme Court and other federal courts have recognized that relation back requires that the conduct alleged in the two pleadings be connected in both "time" and "type." *See Mayle v. Felix*, 545 U.S. 644, 650 (2005); *see also, e.g. Hernandez*, 684 F.3d at 962 (following *Mayle, supra*, and denying relation back based upon differences in amendment). The differing time periods referenced here are not minor – they go to the very heart of the lack of notice to Mr. Drinkwater from the original FAC. Defining a time period *years after* the critical Weinstein agreements were entered into in the original FAC can hardly put Mr. Drinkwater on notice that he could be sued for allegedly wrongful conduct in negotiating those agreements and causing the Debtor to enter into them with the Weinstein entities.[2]

---

   [2]   The Trustee unquestionably *now* alleges that Mr. Drinkwater breached his fiduciary duty in the 2005 and 2006 time frame when, among other times, he "caus[ed] the Debtor to enter into" the Weinstein Agreements. *See* Proposed Amendment, at ¶¶ 10-12, and 44.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

- In arguing relation back applies, the Trustee relies almost entirely on its allegation in the original FAC that Mr. Drinkwater and/or others "authorized payments in excess of $130,000,000.00 to insiders, including officers, directors and members of the Debtor," as notice to Mr. Drinkwater that he was being sued based upon the Weinstein transactions. *See* Amendment Motion, at pp. 12-13. Again, under any fair reading, that is not close to sufficient notice of the Proposed Amendment. There is no evidence in this case that, *at the time of the filing of the FAC in May 2014*, the reference to a $130 million number would have invoked an understanding in Mr. Drinkwater that the Weinstein Company transactions were behind that allegation and being challenged as fraudulent, self-serving transactions. It did not. *See* Drinkwater Decl., ¶¶ 3-4. The Trustee does not support his claim that relation-back should apply with *any* facts showing that, in May 2014 when this lawsuit was initiated, Trevor Drinkwater reasonably should know that the total amount of payments to the Weinstein company during a four-year pre-petition period of their multi-year business dealings amounted to roughly $130 million. Indeed, the Trustee asserts that *he* arrived at the $130 million amount only following an extensive investigation of the Debtor's books and records. The $130 million amount would include literally years of smaller distribution and royalty payments under several complex business agreements. It is a specious assumption and, frankly, a *huge leap* of logic to say that the mere reference to that number could serve as surrogate notice in place of the pages of new allegations that the Trustee now puts forth in the Proposed Amendment.[3]

- As alluded to above, between the FAC and the Proposed Amendment, the Trustee alleges *two entirely different motives* for Mr. Drinkwater's alleged funneling of $130 million to "insiders, including officers, directors and members of the Debtor." In the FAC, the Trustee simply alleges that Mr. Drinkwater did so "*in an effort to avoid paying*

---

[3]   Though concededly not dispositive, Mr. Drinkwater concurrently provides his supporting Declaration in which he confirms that, upon reading the Trustee's original Complaint and FAC, he was confused by the $130,000,000.00 allegation and it *did not* invoke in his mind any suspicion or belief that the Weinstein transactions were being challenged as a result of the Trustee's allegations in the FAC. *See* Drinkwater Decl., ¶ 3.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

*creditors of the Debtor . . . ."  See* FAC, ¶¶ 52 and 53 (stating this *twice*) (emphasis added).

Such language sounds more in the realm of a fraudulent conveyance claim than the self-

profiting scheme alleged now in the Proposed Amendment (which amendment *does not*

assert that the Weinstein-related transfers were fraudulent conveyances).  In the Proposed

Amendment, however, *a completely <u>different</u> story of motivation is told*.  The Trustee now

seeks to allege that, rather than acting to avoid payments to creditors, Mr. Drinkwater

instead paid the money to others "to benefit himself and Weinstein and enhance his

executive positions at the Debtor and the compensation, power and prestige that he

enjoyed as a result of holding those positions and managing the Debtor."  This "personal

gain" scenario sounds in fraud and, therefore, the Trustee was required in the FAC to plead

such a scheme with particularity.  *See e.g., Scafidi v. Western Loan & Bldg. Co.*, 72

Cal.App.2d 552, 553 (1946).  However, notwithstanding how ridiculous these new

"personal gain" allegations are (*i.e.*, that an officer of a company would purportedly

intentionally cause his company's ruin to somehow enhance his position and prestige), the

key is that *those allegations are entirely new and were not pled or even foreshadowed* in

the original FAC.

•    Further demonstrating that the $130 million allegation was not sufficient

notice of the new allegations in the Proposed Amendment, the Trustee now seeks to

include the $130 million allegation in the *disjunctive* to a host of other new alleged

conduct allegedly in breach of Mr. Drinkwater's fiduciary duties.  Specifically, in

Paragraph 44 of the Proposed Amendment, the Trustee alleges that Mr. Drinkwater placed

his personal interests ahead of Debtor's by "(a) causing the Debtor to enter into [various

detailed agreements with the Weinsteins], (b) causing the Debtor to operate under [those

agreements] even though it was evident that the Debtor could not operate profitably

[thereunder], (c) <u>causing the payment of Debtor funds to insiders, including the payment in</u>

<u>excess of $130,000,000.00 to Weinstein pursuant to the Weinstein Transfers</u>, **and**

(d) failing to maximize the Debtor's value for its benefit and the benefit of its creditors.

(Emphasis added.)  In other words, in the Proposed Amendment, the Trustee repeats

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

almost verbatim the original allegation stated in item (c) above (though this time actually *identifies* the Weinsteins), but *adds* several <u>independent</u> and additional claims of breach apart from the disposition of the $130 million in funds.  There is simply *no fair reading* of the original FAC that would have put Mr. Drinkwater on notice in May 2014 that he was being sued for the new conduct identified in items (a), (b) and (d) in the sentence above.[4]

   • Finally, it is worth noting that, at the same time that the FAC was filed against Mr. Drinkwater, the Trustee filed a number of nearly identical actions against other former officers of the Debtor – including (among others), Matthew Smith, Michael Radiloff, and Mitchell Budin.  *Each of those Complaints had the identical form allegation of payment of $130 million to unnamed "insiders" of the Debtor – and each of those lawsuits were subsequently <u>dismissed by the Trustee with prejudice without any settlement or payment of any kind</u>. See* King Decl., Exs. C through E.  Thus, while the relevant time frame for evaluating the sufficiency of notice to Mr. Drinkwater is generally prior to when the applicable statute of limitations period ran (on May 4, 2014), as this litigation carried on, it was by no means unreasonable for Mr. Drinkwater to assume that the vague $130 million allegation was without particular substance, much less to suspect that it pertained to the Weinstein relationship.  Indeed, until the Kaplan firm was retained as special counsel nearly a year after Mr. Drinkwater was sued, it was not even the focus of *this* action.

The comparison discussed above shows plainly that the Trustee's Proposed Amendment is much more than a mere "expansion" or "clarification" of existing allegations in the FAC.  To plead a claim for breach of fiduciary duty, the Trustee was obligated to allege: (1) the existence of a fiduciary relationship/duty; (2) *conduct in breach*

---

[4]   A close examination of the Proposed Amendment shows that, *even now*, the Trustee fails to connect the payment of roughly $130 million to the Debtor's performance of its agreements with the Weinstein entities.  In the Proposed Amendment, the Trustee alleges that the Debtor "transferred $130,459,452.57 to [The Weinstein Company]" from and after December 2007 – but there is no allegation that those funds were transferred *pursuant to* the allegedly "one-sided" and "onerous" agreements otherwise described in the Proposed Amendment.  Proposed Amendment, at ¶ 27.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

*of that duty*; and (3) damages proximately caused by such breach. *See Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101 (1991) (emphasis added). The identification of conduct allegedly in breach of a fiduciary is a critical element, and if indeed the Trustee intended his fleeting reference to the $130 million to serve as a surrogate for recitation of a complex factual history involving a multi-year business arrangement, numerous agreements, countless payments, etc., the sparse allegations of the FAC (outside of an almost entire focus on the other defined "Transfers") were in fact "*so cursory* that someone reading the amended complaint would not know whether it referred to the same conduct charged in the original complaint." *Santamarina*, 466 F.3d at 574 (emphasis added).

Indeed, the cursory nature of the allegations in the Proposed Amendment renders this case far more similar to the cases of *Percy* and *Hernandez*, *supra*, and to the case of *U.S. v. Hicks*, 283 F.3d 380 (D.C.Cir. 2002) cited by the Trustee, where relation back was *not* found, than to the only other decision cited by the Trustee – *Martell v. Trilogy, Ltd.*, 872 F.2d 322(9th Cir. 1989). In *Martell*, the court compared the original and amended pleadings and concluded that the amendment simply extended existing causes of action to an additional defendant. 872 F.2d at 325. The court in *Martell* observed that "[b]oth pleadings undoubtedly emanate from a common core of operative facts." *Id.*  *Martell* did not involve the situation here where the Trustee's original factual averments were extremely limited and vague, and insufficient to fairly evoke the various Weinstein transactions that are now the central thrust of the Proposed Amendment.

The Trustee also cites *Hicks*, *supra*, for the proposition that "amendments that clarify or expand facts will relate back." *See* Amendment Motion, at p. 12. Tellingly, however, the Trustee omits the *second half* of that statement, in which the court in *Hicks* recognized that amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated *far more cautiously*." *See Hicks*, 283 F.3d at 388 (internal citation omitted) (emphasis added). The court in *Hicks* found that the proposed amendment at issue there *did not* relate back, because – <u>*as here*</u> – it was based on different facts and theories from those previously alleged. *See id.* at 389.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

16

OPPOSITION TO MOTION FOR LEAVE TO AMEND

Accordingly, because the Proposed Amendment cannot under any fair reading be deemed to relate back to the time of filing of the FAC for purposes of the new matter asserted in the Proposed Amendment, the Trustee's new allegations are barred by the statute of limitations and allowing them to be asserted here against Mr. Drinkwater would be futile.

### 3. The Trustee's Reservation In The FAC Of A Right To Amend Does Not Create Such A Right Or Excuse The Trustee's Lack Of Sufficient Notice In That Pleading.

Apparently in an attempt to avoid the analysis above, the Trustee's lead argument as to why the relation-back doctrine should not apply here is a strange one: The Trustee argues that he adequately put Mr. Drinkwater on notice in the FAC of a potential amendment concerning the Weinstein transactions by including a form disclaimer that the Trustee "reserves his right to supplement and amend the allegations in the [FAC], including but not limited to, the right to (i) allege further information regarding all Claims for Relief, including additional transfers of interest in the Debtor's assets or additional liabilities incurred by the Debtor . . . and/or (iv) allege additional causes of action in connection with laws and facts set forth [in the FAC]." *See* Amendment Motion, at p. 12. The Trustee, without citation, claims "this language alone is sufficient notice under Rule 15." The Trustee cites no case law to back up that assertion, because there is none. If that language were sufficient to put a defendant on adequate notice of potential later allegations for purposes of relation back, as the Trustee claims, every plaintiff would simply put such form language in their complaints and relation back would be automatic (which it is not).

The Trustee's willingness to make such an argument underscores the Trustee's misunderstanding of, and insufficient respect for, the notice requirement which is a critical component of the relation-back doctrine. The question is not whether the Trustee reserved the right to put sufficient or additional facts in at a later time, but whether the facts that *were* contained in the FAC were sufficient to warrant relation back now. They were not.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

17

OPPOSITION TO MOTION FOR LEAVE TO AMEND

**4.      The Recent Motion Filed By The Weinstein Company Defendants Demonstrates Clear Legal Flaws In The Trustee's New Theory.**

In addition to the futility created by the statute of limitations barring the new allegations, on their face, demonstrate that leave to amend would be futile for another reason – *i.e.*, the claims are meritless.  *See Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).  First, to the extent the Trustee's new fiduciary breach allegations are based upon Mr. Drinkwater allegedly "causing the Debtor to enter into the [Weinstein agreements]," that ground is plainly barred by the statute of limitations, at least as to the critical 2006 Distribution Agreement and related agreements that form the bulk of the Trustee's charges of one-sidedness of the Debtor's and Weinsteins' business relationships. A pending motion for judgment on the pleadings reveals a similar flaw in the Related Case.

Having that obvious problem, the Trustee hedges by alleging something extraordinarily novel but nonetheless legally unsupportable:  In the Proposed Amendment, the Trustee contends that Mr. Drinkwater also breached his fiduciary duty by: (1) continuing the operations of Debtor for some unspecified period; and (2) allowing the Debtor to *continue performing its existing contractual obligations under the Weinstein agreements*!  *See* Proposed Amendment, ¶ 44.  The Trustee, of course, cites no case law to support his insinuation that an officer has a fiduciary duty to immediately shut down a company that is losing money and/or is projected to continue losing money, or to cause his company intentionally breach any contractual obligations that may be operating to the company's detriment (thereby creating, of course, potentially concomitant legal exposure for a potentially equal or higher level of damages from such breach).

Accordingly, the Proposed Amendment should be disallowed as futile because, on its face, the new facts and theories asserted by the Trustee are meritless and will likely be successfully challenged through a motion directed to new pleading if it is allowed.

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

**B.**    **Leave To Amend Is Untimely Following The Trustee's Undue Delay.**

Undue delay in amending a complaint is a factor that supports the denial of a request for leave to amend.  *See, e.g.*, *Patwardhan v. United States ex rel. HHS*, 2014 U.S. Dist. LEXIS 36226, at *14-15 (C.D. Cal. Mar. 18, 2014) (leave to amend denied when plaintiff waited eight months to amend); *Alzheimer's Inst. Of Am. v. Elan Corp. PLC*, 274 F.R.D. 272, 277 (N.D. Cal. 2011) (three-month delay in seeking leave to amend constituted undue delay).  "Although delay is not a dispositive factor in the amendment analysis, … it is relevant, especially when no reason is given for the delay…." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (internal citations omitted).  Further, a "repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend." *Sepehry-Fard v. Bank of New York Mellon, N.A.*, 2013 U.S. Dist. LEXIS 110751, at *10 (N.D. Cal. Aug. 5, 2013) (citing *Abagninin*, 545 F.3d at 742).

In this case, the Trustee seeks leave to amend more than ***two years*** after his initial Complaint and FAC were filed in May 2014.  Much of the Trustee's Amendment Motion and supporting Declaration of James Menton is directed to an attempt to justify that lengthy delay by referencing such things as the Trustee's purported "investigation" into the merits of the Proposed Amendment (including his review of voluminous company records and the 2004 examination of Mr. Drinkwater).  *See* Amendment Motion, at p. 2.  However, even a cursory examination of the Proposed Amendment itself reveals that the Trustee's argument of the need for such an "investigation" to assert the Proposed Amendment is an obvious subterfuge.  That is because nearly *all of the new material in the Proposed Amendment is based upon the allegedly "onerous" and "one-sided" terms of the Weinstein agreements themselves*, and the Trustee has undisputedly had access to copies of those agreements since July of 2014 – just *two months* after the FAC was filed.

The new allegations of the Proposed Amendment all speak to the theory that the <u>express terms</u> of the Debtor's agreements with the Weinsteins were excessively favorable to the Weinsteins, not the product of arms-length negotiation, not consistent with the

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

1    market for similar distribution arrangements, etc., and thus were "onerous" to Debtor and

2    "one-sided" in favor of the Weinsteins.  All of the newly alleged wrongdoing in the

3    Proposed Amendment flows from these allegations, and the Trustee seeks to accuse

4    Mr. Drinkwater of breaching his fiduciary duty by signing those agreements with the

5    Weinstein entities, allowing the debtor to perform those agreements once made, and

6    purportedly paying funds to the Weinsteins pursuant to those agreements.

7         If the terms of the agreements themselves are the source of new allegations, as they

8    are, the natural question is – why didn't the Trustee seek to bring this amendment back in

9    **mid-2014** when the Weinstein entities *undisputedly provided the subject agreements to the*

10   *Trustee's special counsel – the Kaplan firm – and the Kaplan firm performed a "thorough*

11   *analysis" of them*?  Or, at the latest, why didn't the Trustee seek leave to amend in May of

12   2015 (seventeen months ago) when the Trustee filed his detailed Complaint against the

13   Weinstein entities containing essentially *the same allegations* attacking the purported one-

14   sidedness of the Weinstein agreements?  *See* King Decl., ¶ 8 Ex. F.

15        Despite two years of delay, there is nothing in the Proposed Amendment of any

16   substance alleged therein that is material to the new allegations that was not known to the

17   Trustee or which was discovered as a result of the document review or 2004 examination.

18   In essence, the Trustee's delay – *at least over the seventeen months since he sued the*

19   *Weinstein entities in the Related Case in May 2015* – is completely unexplained and is

20   therefore reason alone to deny leave to amend.  *See AmerisourceBergen Corp. v. Dialysist*

21   *West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Minter v. Prime Equip. Co.*, 451 f.3d 1196,

22   1206 (10th Cir. 2006).

23   **C.    Allowing Leave To Amend Will Prejudice Mr. Drinkwater And Cause**

24   **Further Undue Delay To This Proceeding.**

25        When a plaintiff seeks leave to amend to add new allegations that would delay the

26   resolution of the case, the defendant's interest in a speedy resolution is prejudiced.

27   *Finazzo*, 2007 U.S. Dist. LEXIS 26003, at *14-15.  A defendant also can suffer prejudice

28   if an amended complaint changes the nature of the litigation, or if the new claims being

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

20
OPPOSITION TO MOTION FOR LEAVE TO AMEND

alleged would be futile. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The Trustee's extreme and unexplained delay in seeking leave to amend here, particularly in light of the nature of the Proposed Amendment and the arguments above with respect to futility, will significantly prejudice Mr. Drinkwater if the Proposed Amendment is allowed. The Proposed Amendment is a dramatic expansion of the original claims set forth in the FAC. The parties have already conducted written discovery based upon the original allegations, and that discovery will essentially need to be done "from scratch" if amendment is allowed given the differences the two pleadings present. Considered together with the Trustee's concurrently filed motion to consolidate this action with the Related Case, the Proposed Amendment threatens to dramatically change *both* actions (as, for example, Mr. Drinkwater will likely seek a jury trial under the Proposed Amendment and currently a jury trial was not preserved by the parties in either this case or the Related Case). Mr. Drinkwater will also face significant increased litigation expenses based upon what is an entirely different lawsuit from what is alleged in the FAC. *See Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

**D.     Leave To Amend Is Sought In Bad Faith.**

Finally, the Trustee's Amendment Motion should also be denied because the Trustee seek to amend in bad faith. A finding of bad faith is not necessary for a motion for leave to amend to be denied. *See, e.g.*, *Patwardhan*, 2014 U.S. Dist. LEXIS 36226, at *14-20 (denying leave to amend without finding bad faith). However, the presence of bad faith will support such a ruling. *E.g., Carvalho*, 629 F.3d at 892 (amendment denied when plaintiff could not establish *prima facie* case).

Here, the Trustee has acted in bad faith throughout this action by shifting its intentions and allegations against Mr. Drinkwater in an attempt to leverage a settlement. In mid-2015, even after the Weinstein entities were already sued by the Trustee for the same conduct newly alleged against Mr. Drinkwater in the Proposed Amendment, the Trustee and Mr. Drinkwater seemed very close to a settlement based upon the original

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

10845066.1
223818-10001

21

OPPOSITION TO MOTION FOR LEAVE TO AMEND

1  allegations of the FAC – *which allegations Mr. Drinkwater effectively refuted*.  Despite the

2  Trustee's dismissal of all the other former officers of Debtor that the Trustee sued at the

3  same time as Mr. Drinkwater, the prospect of any reasonable settlement disappeared as

4  soon as the Trustee brought the Kaplan firm in as special counsel.  Ever since, the Trustee

5  has sought to hang the threat of amendment to add Weinstein allegations against

6  Mr. Drinkwater over his head – presumably in an effort to improve his position in

7  settlement discussions.  Given the specious theories set forth in, and lack of merit to, the

8  Proposed Amendment, it is difficult to find any other legitimate motivation.

9  **IV.    <u>CONCLUSION</u>**

10         For the foregoing reasons, Mr. Drinkwater respectfully requests that the

11  Amendment Motion be denied in its entirety.

12  Dated:    October 18, 2016                    LOEB & LOEB LLP
                                                LANCE N. JURICH
13                                              BENJAMIN R. KING

14

15                                              By:    /s/  *Benjamin R. King*

16                                                  Benjamin R. King
                                                    Attorneys for Defendant
17                                                  TREVOR DRINKWATER

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10100 Santa Monica Blvd., Suite 2200, Los Angeles, CA  90067-4120

A true and correct copy of the foregoing document entitled (*specify*): (1) DEFENDANT TREVOR DRINKWATER'S OPPOSITION TO MOTION OF PLAINTIFF ALFRED H. SIEGEL, CHAPTER 7 TRUSTEE FOR THE ESTATE OF GENIUS PRODUCTS, LLC, FOR LEAVE TO AMEND COMPLAINT; (2) DECLARATION OF TREVOR DRINKWATER; (3) DELCARATION OF BENJAMIN R. KING
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 18, 2016___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
Benjamin R King    bking@loeb.com, karnote@loeb.com;ladocket@loeb.com
James P Menton, JR    JPMenton@rkmc.com
David B. Shemano    dshemano@robinskaplan.com
Alfred H Siegel (TR)    Al.siegel@asiegelandassoc.com, Lisa.irving@asiegelandassoc.com;
Margo.tzeng@asiegelandassoc.com; asiegel@ecf.epiqsystems.com
Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 18, 2016___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
Hon. Richard M. Neiter, USBC, 255 E. Temple St., Suite 1652, Los Angeles, CA 90012 (via messenger)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 18, 2016 | Kathryn M. Arnote | /s/ Kathryn M. Arnote |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.