ROBINS KAPLAN LLP
David B. Shemano (State Bar No. 176020)
dshemano@robinskaplan.com
James P. Menton, Jr. (State Bar No. 159032)
jmenton@robinskaplan.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067
Telephone: 310-552-0130
Facsimile: 310-229-5800

Special Litigation Counsel for Alfred H. Siegel,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No.  2:11-bk-62283-BB |
| GENIUS PRODUCTS, LLC, | Chapter 7 |
| Debtor. | |
| | |
| ALFRED H. SIEGEL, CHAPTER 7 TRUSTEE FOR THE ESTATE OF GENIUS PRODUCTS, LLC, | Adv. No. 2:14-ap-01287-BB |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; DECLARATION OF JAMES P. MENTON, JR.** |
| v. | |
| TREVOR DRINKWATER, | Date:  November 1, 2016 |
| Defendant. | Time: 2:00 p.m. |
| | Place: Courtroom 1539 |
| | United States Bankruptcy Court |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

Alfred H. Siegel, chapter 7 Trustee (the "Trustee") for the estate of the above-captioned Debtor (the "Debtor"), hereby submits his reply in support of his Motion for Leave to File Amended Complaint (the "Motion").

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Table of Contents**

**Page**

I.  INTRODUCTION ........................................................................................... 1

II.  THE COURT SHOULD GRANT LEAVE TO AMEND UNDER
RULE 15 ........................................................................................................ 2

    A.  Mr. Drinkwater Fails To Show Undue Delay ........................................ 2

    B.  Mr. Drinkwater Fails To Show Undue Prejudice ................................. 7

    C.  The Trustee Has Not Acted In Bad Faith ............................................ 10

III.  THE PROPOSED AMENDED COMPLAINT RELATES BACK
UNDER RULE 15 ........................................................................................ 11

IV.  CONCLUSION ............................................................................................. 18

DECLARATION OF JAMES P. MENTON, JR. ..................................................... 1

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

i

# Table of Authorities

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**Page(s)**

**Cases**

*DCD Programs, Ltd. V. Leighton*,
833 F.2d 183(9th Cir. 1987)..........................................................................6

*Foman v. David*,
371 U.S. 178, 83 S. Ct. 227 (1962) ..............................................................1

*Hernandez v. Valley View Hosp. Ass'n*,
684 F.3d 950 (10th Cir. 2012)......................................................................15

*Howey v. United States*,
481 F.2d 1187 (9th Cir. 1973).....................................................................2, 6

*Martell v. Trilogy, Ltd.*,
872 F.2d 322 (9th Cir. 1989)........................................................................11

*Mayle v. Felix*,
545 U.S. 644, 125 S. Ct. 2562 (2005)..........................................................14

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990)........................................................................7

*Nunes v. Ashcroft*,
375 F.3d 805 (9th Cir. 2003).......................................................................1, 2

*Percy v. San Francisco General Hosp.*,
841 F.2d 975 (9th Cir. 1988)........................................................................15

*Stewart v. Coyne Textile Servs.*,
212 F.R.D. 494 (S.D. W. Va. 2003)..............................................................18

*Sweaney v. Ada County, Idaho*,
119 F.3d 1385 (9th Cir. 1997)...................................................................9, 10

*U.S. v. Hicks*,
283 F.3d 380 (D.C. Cir. 2002) ......................................................................12

**Statutes**

Bankruptcy Code Section 544(b) ...............................................................1, 12

Bankruptcy Code Section 546(a) .....................................................................2

Bankruptcy Code Section 548...........................................................................12

## Rules

Federal Rule of Bankruptcy Procedure 7015 ................................................................2

Federal Rule of Civil Procedure 8(b)(5) ......................................................................16

Federal Rule of Civil Procedure 12(e) .........................................................................16

Federal Rule of Civil Procedure 15...............................................................1, 2, 10, 11

Federal Rule of Civil Procedure 15(a) ...........................................................................2

Federal Rule of Civil Procedure 15(a)(2).....................................................................11

Federal Rule of Civil Procedure 15(c) .........................................................................12

Federal Rule of Civil Procedure 15(c)(1)(B) ..........................................................11, 12

Federal Rule of Civil Procedure 26(f)............................................................................3

## Other Authorities

6A Miller, Federal Practice and Procedure, § 1497 (West 2010) ...................................12

U.S. Const. amd. 5 .......................................................................................................14

U.S. Const. amd. 6 .......................................................................................................14

## I.    **INTRODUCTION**[1]

Following his investigation that was made possible by the Court over the objection of defendant Trevor Drinkwater ("Drinkwater"), the Trustee has filed the Motion seeking leave to file an amended complaint (the "Second Amended Complaint") that reduces and limits this litigation to one restated claim for breach of fiduciary duty (first claim for relief) and three restated claims for avoidance and recovery of fraudulent transfers under Bankruptcy Code section 544(b) (second through fourth claims for relief).  The restated claim for breach of fiduciary duty alleges greater particularity and detail regarding this claim, including identifying the recipient of the $130 million in Debtors funds, The Weinstein Company LLC ("TWC"), and the self-dealing conduct of Mr. Drinkwater giving rise to the claim. The restated claims for fraudulent transfer allege greater particularity and detail regarding the claims, including clarification as to the amount of Debtor funds transferred to Mr. Drinkwater within four years of the bankruptcy (in excess of $1.8 million).

The Trustee has established the grounds to amend its complaint under Rule 15. "In the absence of any apparent or declared reason – such as undue influence, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."' *Foman v. David*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962). The Trustee has also established that the amendment relates back to the pending first amended complaint ("FAC") and, therefore, is timely.

In his Opposition, Mr. Drinkwater attempts to defeat the Motion based upon various arguments that are without support or merit, and the Court should so find.  Mr. Drinkwater's attempt to derail this litigation in its essential infancy runs afoul of this Circuit's policy that "[court] must remain guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003).  The Second Amended Complaint is well pled, was diligently brought to the Court's

---

[1] Terms not defined herein shall have the same meanings ascribed to them in the Motion.

1  attention, and causes no prejudice to Mr. Drinkwater. Consequently, the Court should grant the

2  Trustee leave to file the Second Amended Complaint.

3  **II.    THE COURT SHOULD GRANT LEAVE TO AMEND UNDER RULE 15**

4        The Motion meets the standards of Federal Rule of Civil Procedure 15(a), made applicable

5  herein by Federal Rule of Bankruptcy Procedure 7015.  Rule 15(a) provides that leave to amend

6  "should [be] freely give[n] . . . when justice so requires." This policy is to be applied with

7  extreme liberality because it facilitates decisions on the merits rather than on the pleadings or on

8  technicalities.  *Nunes,* 375 F.3d at 808. "Where there is a lack of prejudice to the opposing party

9  and the amended complaint is obviously not frivolous, or made a dilatory maneuver in bad faith,

10  it is an abuse of discretion to deny such a motion."  *Howey v. United States*, 481 F.2d 1187, 1190-

11  91 (9th Cir. 1973) (amendment five years into case appropriate).

12        **A.    Mr. Drinkwater Fails To Show Undue Delay**

13        In his Opposition, Mr. Drinkwater contends the Trustee engaged in undue delay in seeking

14  leave to file an amended complaint in arguing for denial of the Motion.  But the evidence is

15  absolutely to the contrary and, moreover, reflects Mr. Drinkwater's repeated efforts to thwart the

16  Trustee's investigation and administration of the Debtor's estate.

17        In summary, the case was commenced by an involuntary petition.  The Debtor never

18  responded, an order for relief was entered, and the Trustee was appointed. Thereafter, the Trustee

19  was able to discern that Mr. Drinkwater had served as the President and CEO of the Debtor.  The

20  Trustee was able to locate both a work and home address for Mr. Drinkwater, and then sent him

21  three separate letters over a one year period requesting his cooperation.  Mr. Drinkwater never

22  responded to any of the letters.  Left with no alternative as the section 546(a) statute of limitations

23  approached, the Trustee filed a complaint against Mr. Drinkwater in May 2014 alleging that he

24  had breached fiduciary duties by failing to cooperate, and because Mr. Drinkwater had never

25  explained various transfers of special concern to the Trustee, the Trustee also asserted claims for

26  relief based upon the transfers.

27        While the letters made no impact on Mr. Drinkwater, the complaint apparently did.  He

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1   hired a lawyer and responded to the complaint.  Notwithstanding his actual knowledge of the

2   Trustee's requests, and his actual possession of the Debtor's books and records, it was not until

3   May 26, 2015, more than three years after the involuntary petition was filed, and one year after

4   the Trustee had sued Mr. Drinkwater for failing to cooperate with the Trustee, that Mr.

5   Drinkwater advised the Trustee for the very first time of the existence of five storage units in his

6   possession containing various books and records of the Debtor.

7       Thereafter, on July 2, 2015, the parties had their Rule 26(f) conference.  During the parties

8   Rule 26(f) conference, Mr. Drinkwater's counsel was advised that before being able to make a

9   final recommendation to the Trustee on the course of action to take regarding this litigation,

10   Robins Kaplan would need the cooperation of Mr. Drinkwater in his capacity as the former CEO

11   and President of the Debtor, including requiring him to, among other things, prepare the Debtor's

12   schedules and turn over the books and records of the Debtor stored in the storage facility

13   controlled by Mr. Drinkwater. Mr. Drinkwater refused to cooperate.  He refused to satisfy the

14   outstanding storage fees so that the records could be released.  The storage facility later released

15   the stored records to the Trustee without payment of the storage charges, but the Trustee was

16   required to incur the cost of transporting the records from the storage facility. Mr. Drinkwater has

17   refused to reimburse the Debtor's estate for the costs incurred in removing the stored records

18   from the storage facility.  Declaration of James. P. Menton, Jr. (the "Menton Declaration") ¶ 3.

19       On August 4, 2015, because of Mr. Drinkwater ongoing refusal to cooperate, and because

20   his cooperation was essential to the Trustee's ability to administer the estate, the Trustee filed a

21   motion to compel Mr. Drinkwater to (1) appear for examination as the Debtor's representative,

22   (2) turnover the Debtor's books and records to the Trustee, and (3) file the Debtor's schedules of

23   assets and liabilities and statement of financial affairs in the Debtor's bankruptcy case (the

24   "Motion to Compel").  On August 4, 2015, the Trustee also filed a motion seeking to vacate all

25   dates and deadlines in the Drinkwater Action (the "Motion to Vacate") that specifically

26   contemplated that once Mr. Drinkwater completed compliance with any order on the Motion to

27   Compel, any amendment of the complaint and whether the Drinkwater Action should be

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    consolidated with the Weinstein Action could be considered and a new scheduling order entered.

2    If granted, the motions in combination would afford the Trustee time to review the newly-

3    discovered books and records and discuss the contents with Mr. Drinkwater before determining

4    how best to proceed with this litigation and so advise the Court.

5    The Court approved the Motion to Compel by Order entered September 9, 2015 (the

6    "Order to Compel") and the Motion to Vacate by Order entered September 3, 2015 ("Order

7    Vacating Dates," and together with the Order to Compel, the "September 2015 Orders"). Only as

8    a result of the Order to Compel did Mr. Drinkwater file a declaration with the Court that provided

9    certain very limited information concerning the Debtor in November 2015, and make available

10   for the first time to the Trustee a hard drive on which had been backed up information from the

11   Debtor's computer ("ESI").

12   Subsequently, to afford adequate time for the Trustee to review ESI and the Debtor's

13   stored documents that Mr. Drinkwater had failed to disclose to the Trustee for more than three

14   years ("Hard Copy Documents"), and to take Mr. Drinkwater's testimony pursuant to the 2004

15   Examination ordered by the Court, before determining whether to (1) prosecute the existing

16   claims against Mr. Drinkwater, (2) dismiss those claims, (3) seek leave to amend the first

17   amended complaint or (4) seek to consolidate the Drinkwater Action with the Weinstein Action,

18   the Trustee and Mr. Drinkwater stipulated from time to time to extend the deadline for filing the

19   Motion.  Pursuant to the Order to Compel, and upon agreement of the parties, Mr. Drinkwater's

20   2004 Examination was conducted on August 12, 2016.   The Trustee later filed the Motion within

21   the time period agreed to by the Trustee and Mr. Drinkwater and ordered by the Court.

22   The foregoing evidences that the Trustee acted diligently and without delay in the face of

23   Mr. Drinkwater's prolonged recalcitrance and efforts to thwart the Trustee's investigation and

24   that, consistent what was specified and contemplated when the Court entered the September 2015

25   Orders, the Trustee has since conducted his investigation, including taking Mr. Drinkwater's 2004

26   Examination, and determined to seek leave to file an amended complaint by the Motion. Thus,

27   any suggestion by Mr. Drinkwater that the Trustee engaged in delay, much less undue delay, or

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    that the Motion is not timely, is contrary to the evidence and should be rejected.  And even if

2    there were delay, Mr. Drinkwater should not be heard to complain where, as here, Mr. Drinkwater

3    himself prevented access to the Debtor's books and records and failed to cooperate for years and

4    only sat for his 2004 Examination in August 2016 after being compelled to by the Court.

5          Although the evidence shows there was no undue delay by the Trustee, Mr. Drinkwater

6    attempts to get around this inconvenient truth by arguing that there was no need for the Trustee's

7    investigation at all and that the investigation was a "subterfuge" because "nearly all the new

8    material" in Second Amended Complaint is based on the "onerous" and "one-sided" terms of the

9    Weinstein agreements to which the Trustee has access and which were the basis for the Trustee

10    suing Weinstein in May 2015." Opposition, at 19.  Thus, Mr. Drinkwater claims, the Trustee's not

11    filing the Motion back then and waiting until now is "completely unexplained" and "reason alone

12    to deny leave to amend." Opposition, at 19-20.  Mr. Drinkwater's argument is disingenuous and

13    without merit.

14          First, the Trustee was required to sue Weinstein in May 2015 because the statute of

15    limitations was about to expire, while there was not a similar pressure regarding Drinkwater

16    because of the existing complaint filed in 2014.  If the Trustee was not facing such a critical

17    deadline regarding Weinstein, the Trustee would have preferred to complete an investigation of

18    the facts, as was done with Drinkwater, but that was not an option.

19          The ability to review the books and records disclosed by Mr. Drinkwater in 2015, and then

20    conduct a debtor's examination of Mr. Drinkwater in 2016, was very helpful to the Trustee in

21    evaluating potential claims against Mr. Drinkwater.  Menton Declaration ¶ 4.  Based on the terms

22    of the Weinstein agreements, the Trustee came to understand Weinstein's motivation for entering

23    into such agreements. But the Weinstein agreements and their terms did not explain, among other

24    things, Mr. Drinkwater's motivation respecting them and the transfers to Weinstein. Through his

25    investigation, the Trustee came to understand why Mr. Drinkwater caused the Debtor to enter into

26    and continue to perform under the agreements and to transfer in excess of $130 million to

27    Weinstein that resulted in Debtor creditors going unpaid and the Debtor going bankrupt. The

28

1    Trustee also came to better understand the Debtor's business and operations and its assets and

2    liabilities, transfers made to Mr. Drinkwater and his relationship with Weinstein, including even

3    after leaving the Debtor's employment. As such, while the Second Amended Complaint does

4    contain allegations concerning the Weinstein agreements and their terms, the Second Amended

5    Complaint results from, and is informed by, the Trustee's investigation that included review of

6    the Debtor's own documents that Mr. Drinkwater hid from the Trustee for more than three years

7    and Mr. Drinkwater's 2004 Examination.  Menton Declaration ¶ 4.  A careful review of the

8    Second Amended Complaint evidences as much.   Mr. Drinkwater's argument, therefore, is

9    without merit and should be rejected.

10        Second, even if the Second Amended Complaint were based solely on allegations

11   pertaining to the Weinstein agreements and their terms (which is not true), Mr. Drinkwater would

12   still fail to show "extreme and unexplained delay." Indeed, under that scenario, it would simply

13   mean the Trustee undertook the process described in seeking and obtaining entry of the

14   September 2015 Orders and that, after reviewing Debtor documents and taking Mr. Drinkwater's

15   2004 Examination in August 2016, the Trustee determined to seek leave to amend based on those

16   allegations in accordance with that process. The Trustee, acting consistent that process, was

17   appropriate and consistent with his duties and responsibilities as Trustee and should reasonably

18   and correctly defeat any claim of undue delay.

19        Thus, Mr. Drinkwater has not shown and cannot show that the Trustee engaged in

20   supposedly "extreme and unexplained delay" to support denial of the Motion. His argument,

21   therefore, is without merit and should be rejected.

22        Accordingly, Mr. Drinkwater fails to show undue delay by the Trustee.[2]

23

24   [2] Even if there were delay (there was not), "[d]elay, by itself, is insufficient to justify denial of
     leave to amend." *DCD Programs, Ltd. V. Leighton*, 833 F.2d 183, 186(9th Cir. 1987); *see also*

25   *Howey*, 481 F.2d at 1191("The purpose of the litigation process is to vindicate meritorious claims.
     Refusing, solely because of delay, to permit an amendment to a pleading in order to state a

26   potentially valid claim would hinder this purpose while not promoting any other sound judicial
     policy.")  As demonstrated in the Motion and herein, no other reason exists that would counsel
     for denial of the Motion.

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

**B.    Mr. Drinkwater Fails To Show Undue Prejudice**

Mr. Drinkwater cannot credibly claim to be prejudiced, or caught off guard, by the Second Amended Complaint, since Mr. Drinkwater had first-hand knowledge of the role he played in managing the Debtor and the transactions at issue, including the $130 million of Debtor funds transferred to TWC and the Debtor funds he received personally. The Second Amended Complaint asserts no new causes of action, but rather eliminates various causes of action and then restates those remaining causes of action with greater detail and particularity regarding the misconduct of Mr. Drinkwater in putting his own interests ahead of the Debtor's interests to the detriment of the Debtor.  There are no discovery deadlines in this case, no pending trial date, and the parties have conducted limited formal discovery to date.  There can be no dispute or doubt that, at this early stage of this litigation, that Mr. Drinkwater will have ample time to respond to the Second Amended Complaint and otherwise defend his interests in this litigation. Mr. Drinkwater, nevertheless, argues prejudice would result if leave to amend were granted; but, unfortunately for Mr. Drinkwater, he cannot show any prejudice much less substantial prejudice and his argument fails. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (substantial prejudice and other relevant factors required to be shown).

Mr. Drinkwater claims prejudice based on the supposedly "extreme and unexplained delay in seeking leave to amend." Opposition, at 21.  As demonstrated in the Motion and above, however, the Trustee has been diligent in his investigation and in seeking leave to amend, and there has been no delay much less any "extreme and unexplained delay" on the part of the Trustee.    There has been no delay other than Mr. Drinkwater's well-documented delays associated with his failing to disclose his possession of the Debtor's documents and delay resulting from his indifference to cooperating with the Trustee.

Mr. Drinkwater claims prejudice on the grounds that the Second Amended Complaint is supposedly "a dramatic expansion" of the claims set forth in the FAC that "vastly alter[s] the nature of this lawsuit" and constitutes an "entirely new case." Opposition, at 1, 2, and 21.  What Mr. Drinkwater misleadingly ignores is that this litigation was never solely about the alleged

1    fraudulent transfer of $800,000 to Mr. Drinkwater. The FAC specifically alleges that Mr.

2    Drinkwater "either alone or in concert with other directors or officers of the Debtor, authorized

3    payments in excess of $130,000,000 to insiders, including officers, directors and members of the

4    Debtor in an effort to avoid paying creditors of the Debtor and thereby breached his fiduciary

5    duties by reducing the assets available to pay the Debtor's creditors in said amount." FAC, ¶ 53.

6    While the focus of the investigation prior to the involvement of Robins Kaplan may have been on

7    the fraudulent transfer claims, Mr. Drinkwater had notice he was facing a claim for breach of

8    fiduciary duty involving the transfer of $130 million. He cannot credibly claim otherwise. Mr.

9    Drinkwater also purposely mischaracterizes the Second Amended Complaint, which does not

10   dramatically expand this breach of fiduciary duty claim and the fraudulent transfer claims set

11   forth in the FAC, but rather simply clarifies and provides greater particularity and detail regarding

12   those claims and Mr. Drinkwater's misconduct. In fact, rather than prejudicing Mr. Drinkwater,

13   this increased detail and particularity will no doubt assist Mr. Drinkwater in defending against the

14   claims.

15        Next, Mr. Drinkwater claims prejudice because, if leave to amend were allowed, prior

16   written discovery supposedly would need to be done "from scratch" "given the differences in the

17   two pleadings." Opposition, at 21. Mr. Drinkwater fails to describe or explain the differences in

18   this context much less how any such purported differences would necessitate prior written

19   discovery being done "from scratch." The argument is unintelligible and nonsensical and

20   unsupported in any event. Mr. Drinkwater does reference producing 2,800 pages of documents in

21   this litigation but that cannot provide a basis for claimed prejudice. Opposition, at 5. All 2,800

22   pages related to the fraudulent transfer claims relating to the transfer of $800,000 to Mr.

23   Drinkwater. None of those pages related to the claim for breach of fiduciary duty and self-dealing

24   relating to the transfer of $130 million to TWC. Menton Declaration ¶ 5. Of course, the 2,800

25   pages need not be produced again in the context of the Second Amended Complaint. In

26   referencing production of the 2,800 pages of documents, Mr. Drinkwater also claims that since

27   then he has "delivered every record he has related to the company to the Trustee." Opposition, at

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

5. But Mr. Drinkwater did not deliver the Debtor's books and records that he hid in storage from the Trustee for more than three years. The Trustee ultimately removed them from storage. Moreover, to the extent Mr. Drinkwater delivered other documents to the Trustee, he did so only after being forced pursuant to the Order to Compel.

Next, Mr. Drinkwater claims prejudice because he supposedly will "face significant increased litigation expenses based upon what is an entirely different lawsuit from what was alleged in the FAC." Opposition, at 21. The Second Amended Complaint is not an entirely different lawsuit and therefore the purported basis for the claim fails. Further, there is no reason to believe that the Second Amended Complaint will cause litigation expenses to increase significantly, given the early state of this litigation and the limited formal discovery done to date. In addition, the Second Amended Complaint may actually help to reduce Mr. Drinkwater's potential litigation expenses by eliminating various claims for relief that Mr. Drinkwater would otherwise have to defend against, including claims for breach of fiduciary duty for failing to cooperate, conversion and unlawful distributions, and providing greater particularity with respect to the remaining claims for relief asserted. The Second Amended Complaint focuses and streamlines this litigation to positive effect.

Mr. Drinkwater also claims prejudice if the Trustee were permitted to amend because the amendment is supposedly futile. Opposition, at 21. "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997) (alteration in original). The Second Amended Complaint easily meets this threshold.

In the Opposition, Mr. Drinkwater does not argue that the restated fraudulent transfer claims are futile and, therefore, admits they are not. He argues the breach of fiduciary duty claim is futile based on the statute of limitations and because the claim is supposedly meritless. Mr. Drinkwater admits, however, that, even in the absence of tolling, the Trustee filed the breach of fiduciary duty claim timely back in May 2014. The Trustee in the Second Amended Complaint simply restates this breach of fiduciary duty claim with greater particularity and, therefore, the

1    amendment is timely. As described in the Motion and more fully herein, application of the

2    relation back doctrine under Rule 15 demonstrates that the claim is not barred by the statute of

3    limitations. Furthermore, regarding the merits of the claim, Mr. Drinkwater has made no showing

4    that "no set of facts can be proved under [the Second Amended Complaint] that would constitute

5    a valid and sufficient claim." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir. 1997).

6    Mr. Drinkwater's claim of futility to support alleged prejudice fails.

7        Accordingly, Mr. Drinkwater fails to show undue prejudice to the Court permitting the

8    Trustee to file his Second Amended Complaint.

9        **C.    The Trustee Has Not Acted In Bad Faith**

10       In a desperate attempt to defeat the Motion, Mr. Drinkwater also argues the Trustee has

11   acted in bad faith in seeking leave to file the Second Amended Complaint because Mr.

12   Drinkwater had supposedly "effectively refuted" the allegations in the FAC  and "seemed very

13   close to settlement" with the Trustee before Robins Kaplan, the Trustee's special litigation

14   counsel, became involved.  Opposition, at 21-22.  One problem with this argument is that Mr.

15   Drinkwater had not "effectively refuted" the allegations in the FAC.  In fact, Mr. Drinkwater

16   simply ignored the allegations in the FAC regarding his breach of fiduciary duties and conversion

17   of the Debtor's books and records.  He simply focused on providing 2,800 pages of documents in

18   an effort to support business expense reimbursement transfers he received.  In addition, in making

19   this argument, Mr. Drinkwater fails to disclose that the transfers he chose to focus on did not

20   include at least an additional $1 million he received in Debtor funds within four years of the

21   Debtor's bankruptcy that the Trustee happened to uncover in his subsequent investigation. The

22   Trustee seeks to avoid and recover these additional monies pursuant to the Second Amended

23   Complaint.  Thus, Mr. Drinkwater, unhappy that he was unable to hoodwink the Trustee into a

24   settlement that was detrimental to the Debtor's estate but advantageous to Mr. Drinkwater,

25   essentially argues that the Trustee is supposedly acting in bad faith by seeking to hold Mr.

26   Drinkwater accountable for misconduct he has never refuted and to recover amounts to which the

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Trustee is entitled, including at least the additional $1 million referenced above, pursuant to the

2    Second Amended Complaint.  The supposed bad faith by the Trustee does not exist.

3        Mr. Drinkwater suggests it was unfair for the Trustee to dismiss litigation against other

4    Debtor officers without payment or settlement but not the litigation against him and that such

5    unfairness amounts to bad faith.  What Mr. Drinkwater ignores is that he was the Chief Executive

6    Officer of the Debtor during the entire time the Debtor was an operating company, and that he

7    used his control as insider to cause the transfer of Debtor funds in excess of $130 million to

8    insiders to the detriment of non-insider creditors and placed his own interests ahead of the

9    Debtor's interests and breach his fiduciary duties owed to the Debtor. Mr. Drinkwater also

10   ignores the fraudulent transfer of Debtor funds he received within four years of the bankruptcy

11   amounting to in excess of $1.8 million.  Whatever the merit (or lack of merit) regarding the

12   lawsuits against the other Debtor officers, Mr. Drinkwater was a faithless fiduciary of the Debtor

13   against whom the Trustee has viable claims and seeks recovery.

14       Accordingly, consistent with the liberal standard that applies to motion to amend under

15   Rule 15(a)(2), the Trustee should be permitted to file the Second Amended Complaint.

16   **III.   THE PROPOSED AMENDED COMPLAINT RELATES BACK UNDER RULE 15**

17       Under Rule 15(c)(1)(B), an amendment to a pleading relates back to the date of the original

18   pleading when "the amendment asserts a claim or defense that arose out of the conduct,

19   transaction or occurrence set out – or attempted to be set out – in the original pleading." The Rule

20   is satisfied where the subsequent allegations "share a common core of operative facts so that the

21   adverse party has fair notice of the transaction, occurrence, or conduct called into question."

22   *Martell v. Trilogy, Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989). In the Motion, the Trustee

23   demonstrated that the Second Amended Complaint relates back to the FAC under Rule 15(c)(1)(B)

24   and, therefore, is timely, and the Court should so find.

25       In his Opposition, in an effort to argue that relation back does not apply, Mr. Drinkwater

26   contends that he did not have sufficient notice of the Second Amended Complaint based on the

27   allegations in the FAC. Mr. Drinkwater is wrong. As an initial matter, Mr. Drinkwater ignores

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

that the Trustee amply demonstrated in the Motion that Mr. Drinkwater, in fact, had sufficient

notice.  In particular, as discussed in the Motion, the FAC asserts that Mr. Drinkwater used his

control as an officer and insider of the Debtor to cause the dissipation of in excess of

$130,000,000 million to insiders, including officers, directors and members of the Debtor, to the

substantial harm of the Debtor and which breached his fiduciary duties to the Debtor.  Drinkwater

Action, FAC, ECF No. 2, ¶¶ 45-53.  In addition, the FAC asserts that Mr. Drinkwater's

mismanagement of the Debtor caused the dissipation of Debtor funds that included fraudulent

transfers to Mr. Drinkwater.  Drinkwater Action, FAC, ECF No. 2, ¶¶ 7-44, 49 and 52. The FAC

seeks to avoid and recover the fraudulent transfers, or the value thereof, from Mr. Drinkwater for

the benefit of the estate under Bankruptcy Code section 544(b) and 548.  Drinkwater Action, FAC,

ECF No. 2, ¶¶ 7-44. The Second Amended Complaint provides additional detailed information

relating to the same conduct and claims alleged in the FAC.  Thus, the breach of fiduciary duty

and fraudulent transfer claims asserted in the Second Amended Complaint arise out the same

common core of operative facts such that the claims will likely be established by the "same kind

of evidence" and relation back under Rule 15(c) is proper.  *See U.S. v. Hicks*, 283 F.3d 380, 388

(D.C. Cir. 2002) (amendments that clarify or expand facts will relate back); *see also* 6A Miller,

Federal Practice and Procedure, § 1497 at 87-89 (West 2010) ("[A]mendments that . . . expand or

modify the facts alleged in the earlier pleading meet the Rule 15(c)(1)(B) test and will relate back.

Thus, amendments that do no more than restate the original claim with greater particularity or

amplify the details of the transaction alleged in the preceding pleading fall within Rule 15

(c)(1)(B).").

In an attempt to support his purported lack of sufficient notice, Mr. Drinkwater cites to

paragraph 48 of the FAC, which states that "Plaintiff is informed and believes that Defendant

breached his fiduciary duties to the Debtor and its creditors, as described in detail herein," and

then asserts that the only "detail contained anywhere in the FAC pertains" to transfers made to Mr.

Drinkwater.  Opposition, at 11. This is simply not true. Additional allegations in the FAC include

the following:

- Plaintiff is informed and believes that Defendant, either alone or in concert with other directors or officers of the Debtor, breached his fiduciary duty to the Debtor and their creditors by causing the Debtor to issue payments of Debtor funds to insiders, including officers, directors and members of the Debtor, in an effort to avoid paying creditors of the Debtor.  Drinkwater Action, FAC, ECF, ¶ 49.

- The dissipation of Debtor funds authorized by the Defendant reduced the assets available to the Debtor and the Debtor's creditors. Drinkwater Action, FAC, ECF No. 2, ¶ 50.

- The dissipation of funds of the Debtor authorized by Defendant caused damage to the Debtor and to the Debtor's creditors who did not receive payment on account of obligations due from the Debtor to the Debtor's creditors. Drinkwater Action, FAC, ECF No. 2, ¶ 51.

- Defendant used his position, control and power as a director and officer of the Debtor to issue payments of the Debtor's funds to insiders, including officers, directors and members of the Debtor, in an effort to avoid paying creditors of the Debtor, and in so doing, breached his fiduciary duties to the Debtor and its creditors. Drinkwater Action, FAC, ECF No. 2, ¶ 52.

- Plaintiff is informed and believes that Defendant, either alone or in concert with other directors or officers of the Debtor, authorized payments in excess of $130,000,000.00 to insiders, including officers, directors and members of the Debtor, in an effort to avoid paying creditors of the Debtor and thereby breached his fiduciary duties by reducing the assets available to pay the Debtor's creditors in said amount. Drinkwater Action, FAC, ECF No. 2, ¶ 53.

These specific details in the FAC concerning Mr. Drinkwater's breach of his fiduciary duties, including the very specific allegation that he authorized payment in excess of $130 million to insiders, including officers, directors and members of the Debtor, leave little doubt that they provided sufficient notice of the additional information and detail concerning the insider payment of the $130 million to Weinstein contained in the Second Amended Complaint.

Next, in an effort to defeat relation back, Mr. Drinkwater argues that the FAC does not provide sufficient notice because the FAC and the Second Amended Complaint supposedly reference different time periods for alleged wrongful conduct.  Mr. Drinkwater asserts that the FAC covers "roughly June 2007 to the Petition Date" whereas the Second Amended Complaint goes back to "December 2005 when the Debtor and Weinstein entities initiated their business relationship." Opposition, at 12. Mr. Drinkwater asserts these different time periods "are not minor" and result in the lack of sufficient notice.  Mr. Drinkwater's argument is without merit.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Initially, as a factual matter, in relation to the Debtor, the wrongful conduct of Mr.

2    Drinkwater commenced in or about July 2006 and continued thereafter, and did not start in

3    December 2005, contrary to what Mr. Drinkwater asserts. In addition, any supposed different

4    time periods are minor and irrelevant here concerning sufficient notice. What is relevant is that

5    the FAC alleges that the Debtor's management engaged in mismanagement which caused the

6    Debtor to cease operations, and that Mr. Drinkwater, as an officer of the Debtor, authorized

7    payment of in excess of $130 million to insiders in breach of his fiduciary duties to the Debtor

8    and its creditors, at a time when the Debtor was insolvent or became insolvent, to the substantial

9    detriment of the Debtor and its creditors.  As a result, the FAC provides sufficient notice of that

10   same conduct alleged in the Second Amended Complaint with greater particularity which

11   happens to include details and explanation prior to 2006. Thus, this argument by Mr. Drinkwater

12   is without merit, and cases he cites are inapposite and unavailing.

13   Mr. Drinkwater cites *Mayle v. Felix*, 545 U.S. 644, 125 S. Ct. 2562 (2005), wherein the

14   Supreme Court held that an amendment to a habeas petition did not relate back when it stated a

15   claim under a different Bill of Rights amendment from that claimed as a ground in the original

16   petition. The original petition claimed that admission of videotaped witness testimony violated

17   the petitioner's rights under the Confrontation Clause of the Sixth Amendment.  The amended

18   petition – filed after the habeas limitations period had expired – claimed that statements the

19   defendant made to police during the interrogation were the product of coercive police tactics, in

20   violation of his Fifth Amendment right against self-incrimination. In its analysis, the Court noted

21   that under Habeas Rule 2(c), "[the defendant's] Confrontation Clause claim would be pleaded

22   discretely, as would his self-incrimination claim." *Mayle*, 545 U.S. at 661. The Court found no

23   "common core of operative facts" between the alleged coercive police tactics and the

24   Confrontation Clause violation because the activities were "separate in both time and type."

25   *Mayle*, 545 U.S. at 657 (internal quotations omitted).  Here, by contrast, the FAC and the Second

26   Amended Complaint effectively concern the same type of activities over the same time period –

27   Mr. Drinkwater's breach of his fiduciary duties owed to the Debtor relating to insider payments to

28

1    Weinstein exceeding $130 million and Mr. Drinkwater's receipt of Debtor funds amounting to

2    fraudulent transfers.

3        Mr. Drinkwater also cites *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950 (10th Cir.

4    2012).   In that case, the plaintiff filed a complaint against the defendant claiming racial and

5    national origin discrimination based on hostile work environment and constructive discharge. In

6    an amended complaint, she claimed retaliation. In affirming the district court's ruling that the

7    amended complaint did not relate back, the 10th Circuit found that plaintiff's "claim is based on

8    factual allegations that were new and discrete from the facts she originally pled."  684 F.3d at 950.

9    This case, by contrast, does not involve an amended pleading asserting a new claim based on new

10   and discrete factual allegations but rather the same claims with greater detail and particularity.

11       Mr. Drinkwater also cites *Percy v. San Francisco General Hosp*., 841 F.2d 975 (9th Cir.

12   1988). In that case, the Ninth Circuit affirmed the district court determination that the amended

13   pleading did not relate back where the original pleading only alleged facts having to do with a

14   racial discrimination claim in termination from a hospital whereas the amended pleading included

15   a claim that plaintiff had been denied due process in a subsequent Civil Service Commission

16   hearing.   In reaching its decision, the 9th Circuit concluded that the original pleading failed to

17   provide notice of the amendment as "the two events are entirely different."  *Percy*, 841 F.2d at

18   980.   Here, by contrast, the FAC provided facts noticing the breach of the fiduciary duty claim

19   against Mr. Drinkwater and an amended pleading that provides details and greater particularity

20   regarding that same claim, not an entirely different claim or event.

21       Next, in another attempt to defeat relation back, Mr. Drinkwater argues that the allegation

22   in paragraph 53 of FAC that Mr. Drinkwater "authorized payments in excess of $130 million to

23   insiders, including officers, directors and members of the Debtor" did not "invoke[] an

24   understanding in Mr. Drinkwater that the Weinstein Company transactions were behind that

25   allegation and being challenged" and therefore the FAC supposedly did not provide sufficient

26   notice for relation back purposes.  Opposition, at 13.  Mr. Drinkwater's argument is off the mark.

27   Paragraph 53 and others in the FAC clearly and unequivocally provide notice that Mr. Drinkwater

28

1   was being sued for breaching his fiduciary duties owed to the Debtor and its creditors based upon

2   his authorizing payments in excess of a specific amount -- $130 million – to insiders of the

3   Debtor. Mr. Drinkwater cites no authority that such notice is insufficient for relation back much

4   less authority for the proposition that notice to be sufficient requires invoking any such

5   understanding on the part of Mr. Drinkwater. Sufficient notice of the breach of fiduciary claim

6   was provided in the FAC, as demonstrated in the Motion and discussed above, and this argument

7   of Mr. Drinkwater's is unavailing.[3]

8       Mr. Drinkwater next latches upon the concept of supposed "different motives" in an effort

9   to support his argument of insufficient notice to support relation back.  Mr. Drinkwater asserts

10  that the FAC alleges that Mr. Drinkwater authorized the payment of in excess of $130 million to

11  insiders "in an effort to avoid paying creditors of the Debtor" whereas the Second Amended

12  Complaint alleges that Mr. Drinkwater was motivated by "personal gain." Opposition, at 14.  But

13  the FAC specifically includes allegations that "the Debtor's management transferred Debtor funds

14  to other affiliated or related entities, including [Mr. Drinkwater] for personal benefits which are

15  not yet known," which were incorporated into the breach of fiduciary duty claim, and the breach

16  of fiduciary duty claim alleges that Mr. Drinkwater owed fiduciary duties, including duties of

17  care, loyalty and good faith, that were breached in relation his authorizing payment of in excess

18

---

19  [3] In his declaration filed in support of his Opposition ("Drinkwater Declaration"), Mr. Drinkwater
20  claims, among other things, that paragraph 53 of the FAC "was confusing" and that "[t]he $130
    million was out of nowhere and I did not know what the Trustee intended to reference, if
21  anything." Drinkwater Declaration, ¶ 3. Mr. Drinkwater's purported confusion and lack of
    understanding regarding paragraph 53 is belied by the fact that Mr. Drinkwater answered the FAC
22  without indicating he did not have sufficient information to do so, Federal Rule of Civil
    Procedure 8(b)(5), and he did not file a motion for a more definite statement under by Federal
23  Rule of Civil Procedure 12(e). Mr. Drinkwater specifically and unequivocally denied paragraph
    53 of the FAC. Drinkwater Action, Answer, ECF No. 10, at 5. As Mr. Drinkwater readily admits
24  in his Opposition, his purported state of mind is irrelevant on the matter of notice. Opposition, at
    3 ("the only notice that matters is that provided by the FAC."). The Trustee is submitting
25  concurrently herewith his evidentiary objections to the improper Drinkwater Declaration.

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1  of $130 million to insiders. Drinkwater Action, FAC, ECF No. 2, ¶¶ 12, 18, 25, 45-46, 48, 52, 53.

2  As a result, the concept of motive of "personal gain" is evident in the FAC, contrary to what Mr.

3  Drinkwater would have this Court believe.  Moreover, even if that were not the case, Mr.

4  Drinkwater cites no authority to suggest that, to the extent different motives are alleged in the

5  pleadings, that fact is material or somehow warrants the conclusion that sufficient notice was not

6  provided by the FAC for relation back purposes.  The argument lacks merit.

7  Mr. Drinkwater complains that the FAC contained the discussed $130 million allegation

8  but that the Second Amended Complaint includes additional allegations that Mr. Drinkwater's

9  mismanagement included (a) causing the Debtor to enter into the Weinstein agreements, (b)

10  causing the Debtor to continue to operate under those agreements and (c) failing to maximize the

11  Debtor's value Mr. Drinkwater labels these additional allegations as "independent and additional

12  claims of breach" and "new conduct" and asserts their lack of inclusion in the FAC means that the

13  FAC did not provide sufficient notice for relation back of the Second Amended Complaint.

14  Opposition, at 14-15.  Mr. Drinkwater provides no evidence or authority to support this sweeping

15  conclusion.  Moreover, the foregoing additional allegations in the Second Amended Complaint

16  simply provide additional detail and greater particularity regarding the core $130 million

17  allegation in both the FAC and the Second Amended Complaint.  Thus, this argument by Mr.

18  Drinkwater likewise fails.

19  Lastly, Mr. Drinkwater characterizes the Trustee's allegation regarding Mr. Drinkwater's

20  breaching his fiduciary duties in authoring payment in excess of $100 million to insiders as

21  nothing more than a "fleeting reference" that "was without particular substance." Opposition, at

22  15-16.  Mr. Drinkwater thus suggests he consciously ignored the allegation and those related to

23  his breach of fiduciary duties owed to the Debtor and paid them no mind.  His doing so, however,

24  does not change the fact that the FAC provided sufficient notice to warrant this Court finding that

25  the Second Amended Complaint relates back to the FAC and, therefore, is timely.[4]

26  _____

27  [4] The reservation of rights provision in the FAC (paragraph 8) also provides sufficient notice for relation back, contrary to what Mr. Drinkwater contends in his Opposition (at 17). The circumstances of this case warrant the Court so finding because, as demonstrated in the Motion

28  and discussed above, to conclude otherwise would effectively permit Mr. Drinkwater to benefit

Accordingly, the Second Amended Complaint is timely.

## IV.    **CONCLUSION**

For the reasons stated in the Motion and above, the Court should grant the Motion.

DATED:  October 25, 2016                **ROBINS KAPLAN LLP**

By:  /s/ James P. Menton, Jr.
     David B. Shemano
     James P. Menton, Jr.

Special Litigation Counsel for Alfred H. Siegel,
Chapter 7 Trustee

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

from his own misconduct in continually failing and refusing to disclose to the Trustee his possession of the Debtor's books and records for more than three years, including more than a year after this litigation was commenced, and otherwise failing to cooperate with the Trustee in his administration of the Debtor's estate, thereby thwarting and prejudicing the Trustee's investigation of Mr. Drinkwater himself and his activities for years.  Mr. Drinkwater should not be permitted to benefit from his own deceit. Cf. S*tewart v. Coyne Textile Servs.*, 212 F.R.D. 494, 497 (S.D. W. Va. 2003) ("This Court will not allow Defendants to benefit by their discovery violations…").

# DECLARATION OF JAMES P. MENTON, JR.

I, James P. Menton, Jr., declare as follows:

1.      I am a partner with the law firm of Robins Kaplan LLP ("Robins Kaplan"), special counsel to Alfred H. Siegel (the "Trustee"), chapter 7 trustee for the estate of Genius Products, LLC (the "Debtor") and the plaintiff in the above-captioned adversary proceeding.  Unless otherwise stated, the facts stated herein are based on my personal knowledge and, if called upon to testify, I would and could competently testify thereto

2.      I make this declaration in support of the Trustee's reply in support of Trustee's Motion for Leave to File Amended Complaint (the "Motion").  Terms not defined herein shall have the same meanings ascribed to them in the Motion.

3.      On July 2, 2015, the parties had their Rule 26(f) conference.  David Shemano and I participated on behalf of the Trustee.  Mr. Drinkwater's counsel was advised that before being able to make a final recommendation to the Trustee on the course of action to take regarding this litigation, Robins Kaplan would need the cooperation of Mr. Drinkwater in his capacity as the former CEO and President of the Debtor, including requiring him to, among other things, prepare the Debtor's schedules and turn over the books and records of the Debtor stored in the storage facility controlled by Mr. Drinkwater. Mr. Drinkwater refused to cooperate.  He refused to satisfy the outstanding storage fees so that the records could be released.  The storage facility later released the stored records to the Trustee without payment of the storage charges, but the Trustee was required to incur the cost of transporting the records from the storage facility. To date, Mr. Drinkwater has not reimbursed the Debtor's estate for the costs incurred in removing the stored records from the storage facility.

4.      I reviewed the Hard Copy Documents and ESI and the ability to review the same and then to conduct Mr. Drinkwater's 2004 Examination was helpful in evaluating potential claims against Mr. Drinkwater. I attended the 2004 Examination, which took place on August 12, 2016.  The Second Amended Complaint results from, and is informed by, the Trustee's investigation that included the above-referenced document review and examination.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1        5.    Mr. Drinkwater references producing 2,800 pages in this litigation in the

2    Opposition.  I have reviewed those 2,800 pages. All 2,800 pages related to the fraudulent transfer

3    claims relating to the transfer of $800,000 to Mr. Drinkwater asserted in the FAC.  None of those

4    pages related to the claim for breach of fiduciary duty and self-dealing relating to the transfer of

5    $130 million to TWC.

6        I declare under penalty of perjury that the foregoing is true and correct.

7        Executed this 25th day of October 2016 at Los Angeles, California.

8

9                     /s/ James P.  Menton, Jr.
                 James P. Menton, Jr.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

ROBINS KAPLAN LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; DECLARATION OF JAMES P. MENTON, JR.** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 25, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Lance N Jurich     ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Benjamin R King     bking@loeb.com, karnote@loeb.com;ladocket@loeb.com
- James P Menton     JPMenton@rkmc.com
- David B Shemano     dshemano@robinskaplan.com
- Alfred H Siegel (TR)     Al.siegel@asiegelandassoc.com,
  Lisa.irving@asiegelandassoc.com;Margo.tzeng@asiegelandassoc.com;asiegel@ecf.epiqsystems.com
- Lindsey L Smith     lls@lnbyb.com, lls@ecf.inforuptcy.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **October 25, 2016** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Judge:**
Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 25, 2016 | Diana Tehranfar | /s/ Diana Tehranfar |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
61249003.1

**F 9013-3.1.PROOF.SERVICE**